UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MARLON ADAMS, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | 4:18-CV-0040 CDP |
| CITY OF ST. LOUIS, et al., | ) |  |
| Defendants. | ) |  |

## MEMORANDUM AND ORDER

This matter is before the Court upon review of the amended complaint filed by plaintiff Marlon Adams. Due to deficiencies in the original complaint, the Court previously directed plaintiff to file an amended complaint within twenty-one days. Plaintiff has duly filed an amended complaint. However, many of the same deficiencies in the original complaint remain in the amended complaint. Therefore, for the reasons discussed below, the Court will direct plaintiff to file a second amended complaint.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2)(B), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 678. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 679. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 680-82.

Pro se complaints are to be liberally construed, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), but they still must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court must weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004).

**Background**

Plaintiff is a pretrial detainee at St. Charles County Correctional Center in St. Charles, Missouri. He brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. The Court previously granted plaintiff's motion for leave to proceed in forma pauperis. (Docket No. 5). The Court also directed plaintiff to file an amended complaint that separately numbered each of his claims, and that identified the defendant allegedly responsible for each claim. *Id*. The Court noted that it would not be sufficient for plaintiff to list a group of defendants and say they violated his rights.

On January 22, 2018, plaintiff filed an amended complaint alleging a number of unconstitutional conditions of confinement while he was incarcerated at the St. Louis Medium Security Institution ("MSI") from March to August, 2017. (Docket No. 6). He identified twelve individual defendants by name: Captain Irene Mitchell, Captain Ervins, Captain Diggs, Major Russell Brown, Chief Investigator Gary Hayes, Lieutenant Lindsey, Lieutenant Benjamin, Lieutenant M. Butler, Officer T. Roberts, Officer I. Griffen, Commissioner Dale Glass, and Superintendent Jeffrey Carson.[1] All the named defendants are employees of MSI. Plaintiff also names "Unknown Captains" and "Unknown Lieutenants" as defendants, as well as the City of St. Louis. The defendants are named in both their individual and official capacities.

**The Amended Complaint**

Plaintiff's amended complaint is comprised of thirty-seven numbered paragraphs. He begins listing his claims in paragraph 17, wherein he states that he is a pretrial detainee who had been housed at MSI. Plaintiff states that when he arrived at MSI, he observed "bloody panties and underwear stained with fecal matter, all over the booking area." (Docket No. 6 at 6). He also

---

[1] Plaintiff does not mention defendant Glass or Carson in section II of the amended complaint, where he lists the other defendants. However, he refers to Glass and Carson several times in section III, plaintiff's statement of claims.

states that there was "black mold/fungus" caked on the walls, and "mold/fungus" falling from the ceiling. Plaintiff alleges these conditions made it difficult for him to breathe.

In paragraph 18, plaintiff says that after booking he was transferred to D Dorm. He alleges that the conditions of D Dorm were similar to booking, in that there was "bloody underwear strewn everywhere" and black mold and fungus on the walls. (Docket No. 6 at 6). Plaintiff claims he also noticed rats, roaches, and pests running over the floor. Plaintiff alleges in paragraph 18 that defendants Mitchell, Ervins, Diggs, Brown, Hayes, Lindsey, Benjamin, Butler, Roberts, and Griffen refused to ensure that inmates received cleaning supplies.

In paragraph 19, plaintiff alleges that all of the individual defendants were responsible for ensuring inmates were provided three "nutritious and edible meals per day," cleaning supplies, clothing, clean drinking water, appropriate temperatures, exercise, and reasonable safety. (Docket No. 6 at 6). He alleges that defendant Glass was responsible for overall administration of MSI, including making and enforcing facility policies, dealing with budgetary issues, and ensuring that inmates received proper meals, clothing, cleaning supplies, adequate shelter, and safety. Plaintiff alleges that defendant Carson was directly below defendant Glass in rank. Plaintiff states that defendant Carson was responsible for handling grievances, as well as ensuring inmates were provided appropriate meals, clothing, cleaning supplies, adequate shelter, and safety. Plaintiff also alleges that defendant Carson delegates these duties to defendants Mitchell, Ervins, Diggs, Brown, and "all of the Lieutenants, Captains, and Officers." He further alleges that defendant Hayes was responsible for investigating fights between inmates and allegations of misconduct by the staff. Plaintiff states that defendant Brown was also required to report his findings to defendants Glass, Carson, and Brown, and all of the captains and lieutenants.

In paragraph 20, plaintiff alleges that he was forced to live in "squalid conditions." (Docket No. 6 at 7). He states that dust, mold, and grime was caked to the walls, and that he was forced to inhale this dust and grime. He also states that he was not given cleaning supplies, and instead had to attempt to clean the facility by putting shampoo on rags or napkins. Plaintiff alleges that he requested cleaning supplies, but that defendants Mitchell, Ervins, Diggs, Brown, Lindsey, Benjamin, Butler, Griffen, and Roberts refused these requests. Plaintiff asserts that defendant Hayes told inmates it was "beneath him" to even consider bringing them cleaning supplies. Further, plaintiff alleges that defendants Glass and Carson were made aware of these conditions by both oral and written grievances; however, no corrective action was taken.

In paragraph 21, plaintiff states that he was served food that was spoiled, inedible, and could not be consumed. (Docket No. 6 at 7). Plaintiff alleges, for example, that he was served cold oatmeal, toast that was infested with insects, and a cold gruel known as "ratback." Plaintiff states that due to the inedibility of the food, he lost over forty-five pounds. Plaintiff alleges that defendants Glass and Carson were aware of the food because grievances had been filed. He additionally asserts that defendants Mitchell, Ervins, Diggs, Brown, Hayes, Roberts, Griffen, and other unknown lieutenants and officers were responsible for ensuring that inmates received edible food, but took no corrective action.

In paragraph 22, plaintiff alleges that he did not receive clean drinking water while incarcerated at MSI. He states that the water often came out brown, and asserts that he "later found out that it contained fecal matter due to a plumbing problem." (Docket No. 6 at 7). Plaintiff additionally claims that the water was contaminated with lead and other bacteria, and that outside water had to be brought in for them to drink. Plaintiff alleges that defendants Glass and Carson took no steps to ensure provision of clean drinking water, even though they were on

notice due to grievances, new media reports, and lawsuits that had been filed. Plaintiff also alleges that defendants Mitchell, Ervins, Diggs, Brown, Hayes, Lindsey, Benjamin, Butler, Roberts, Griffen, and other unknown captains and lieutenants received complaints about the contaminated water but denied requests to do something about it.

In paragraph 23, plaintiff states that during the summer months, it was so hot that he was "forced to practically walk around naked" due to the lack of air conditioning. (Docket No. 6 at 7). He alleges that defendants Glass and Carson were aware of the situation because of verbal and written complaints, and because they crafted the "policies and procedures that led to the lack of air conditioning." (Docket No. 6 at 7-8). Plaintiff further alleges that defendants Mitchell, Ervins, Diggs, Brown, Hayes, Roberts, Griffen, and all of the other unknown captains, lieutenants, and officers were aware of the situation, because they "all walked through the facility, and were sweating profusely" and were constantly commenting on the heat. (Docket No. 6 at 8). He also states that these defendants received verbal and written complaints about the heat, but took no corrective action.

In paragraph 24, plaintiff reasserts that he was forced to live in squalid conditions. (Docket No. 6 at 8). He claims that there was black mold on the walls, which he was forced to inhale. He claims that the toilets often overflowed, leaking urine and fecal matter. He states that he often had to urinate or defecate into a bucket, because the toilet was broken, and that he had to use a t-shirt to wipe himself because the guards rarely passed out toilet paper. He also claims that his dorm was infested with rats, roaches, and snakes. Plaintiff asserts that these conditions caused him to become sick. He alleges that defendants Glass and Carson were responsible for him living in these conditions due to their supervisory capacity.

In paragraph 25, plaintiff alleges that defendants Mitchell, Ervins, Diggs, Brown, Hayes, and other unidentified captains, lieutenants, and officers were responsible for ensuring that he lived in sanitary conditions. (Docket No. 6 at 8). He claims that these defendants failed to remove vermin, provide cleaning supplies, and fix the toilets, despite complaints being made about these issues.

In paragraph 26, plaintiff alleges that inmates were forced to participate in "fight clubs," and that if they refused, they were denied breakfast, lunch, and dinner. (Docket No. 6 at 8). Plaintiff claims these fight clubs were sanctioned by defendants Glass, Carson, Mitchell, Ervins, Diggs, Brown, Hayes, Lindsey, Benjamin, Roberts, Griffen, and all of the unknown captains, lieutenants, and officers. Plaintiff states that these defendants would at times serve as "hosts for these tournaments." He further alleges that he was "severely injured" as a result of participating in these fight clubs.

In paragraph 27, plaintiff claims that correctional officers, captains, and lieutenants would "put out hits on inmates who caused them problems or filed too many grievances." (Docket No. 6 at 8). Plaintiff alleges these staff members "would pay inmates to stab, and sometimes kill, other inmates."

In paragraph 28, plaintiff alleges that he was denied hygiene products such as shampoo, lotion, deodorant, soap, or combs during the entirety of his stay at MSI. (Docket No. 6 at 8). He claims he made repeated requests for said items, but that MSI has a custom or policy of refusing to give inmates hygiene supplies.

In paragraph 29, plaintiff asserts that he was denied an opportunity for outdoor exercise. (Docket No. 6 at 9). He claims that defendants Glass and Carson told defendants Mitchell, Hayes, Ervins, Diggs, Brown, Lindsey, Benjamin, Butler, Roberts, Griffen, and other unknown

lieutenants and officers to deny any requests for recreation. Plaintiff states that the lack of outdoor exercise caused his body to weaken and his muscles to atrophy.

In paragraph 30, plaintiff alleges that he never received any response to the numerous grievances he filed. (Docket No. 6 at 9). Plaintiff further claims that as a matter of "policy," the grievances filed by inmates were "routinely thrown in the trash."

In paragraph 31, plaintiff states that defendant City of St. Louis has "paid out millions of dollars in lawsuits, filed by current and former inmates at the facility." (Docket No. 6 at 9). He asserts that defendant City of St. Louis is directly responsible for the degeneration of the facility over time, and that the city has refused to pay for repairs. He further states that MSI has been condemned by the city, yet continues to house inmates.

In paragraph 32, plaintiff alleges that defendant City of St. Louis has a "well known policy and custom" of allowing inmates to live in squalid conditions. (Docket No. 6 at 9). He also alleges that defendant City of St. Louis has a policy and custom of forcing inmates to participate in "fight club like tournaments."

In paragraph 33, plaintiff reasserts his allegations against defendants Glass, Carson, Mitchell, Ervins, Diggs, Brown, Hayes, Lindsey, Benjamin, Butler, Roberts, Griffen, and unknown captains, unknown lieutenants, and unknown officers. (Docket No. 6 at 10). He claims these defendants violated his rights under the Eighth and Fourteenth Amendments by forcing him to live in squalid conditions, denying him hygiene supplies, denying him edible and nutritious food, denying him clean drinking water, denying him warmth, and denying him air conditioning. Plaintiff alleges that defendants should have known about the conditions at MSI since they were readily apparent.

In paragraph 34, plaintiff seeks to bring a claim for "Intentional Infliction of Emotional Distress" against all the individual defendants. (Docket No. 6 at 10). He alleges that the defendants should have known that their actions and inactions would cause him extreme emotional distress.

In paragraph 35, plaintiff seeks to bring a claim of "Intentional Infliction of Emotional Distress" against Mitchell, Ervins, Diggs, Brown, Hayes, Lindsey, Benjamin, Butler, Roberts, Griffen, and unknown captains, unknown lieutenants, and unknown officers for the reasons outlined in paragraph 34. (Docket No. 6 at 10).

Finally, in paragraph 36, plaintiff seeks to bring a claim of "breach of duty" against defendants Mitchell, Roberts, Griffen, Glass, Carson, Ervins, Brown, Hayes, Benjamin, Butler, and unknown captains, unknown lieutenants, and unknown officers. (Docket 6 at 10). Plaintiff alleges that the defendants breached their duty to ensure he was confined in humane and safe conditions.

Plaintiff's amended complaint seeks a declaration that the acts or omissions of the defendants violated the Constitution. (Docket No. 6 at 10). He also seeks a preliminary injunction enjoining defendants from allowing the conditions at MSI to continue. Further, plaintiff requests nominal damages in the amount of $1,000, compensatory damages in the amount of $450,000, punitive damages in the amount of $1,500,000, and damages for the state law claims in the amount of $400,000.

## Discussion

Plaintiff's allegations regarding the conditions of his confinement are serious and, if properly pleaded, could be sufficient to pass through § 1915 review. *See e.g.*, *Turner v. Mull*, 784 F.3d 485, 491 (8th Cir. 2015) ("inmates are entitled to reasonably adequate sanitation"); *Owens v.*

9

*Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) ("Punishment that deprives inmates of the minimal civilized measures of life's necessities is unconstitutional"); *Divers v. Dep't of Corrections*, 921 F.2d 191, 194 (8th Cir. 1990) (inmates are entitled to adequate clothing and a nutritionally adequate diet). However, the amended complaint filed by plaintiff remains deficient. Plaintiff alleges numerous factual allegations regarding the cleanliness, temperature, food, and safety of MSI. His amended complaint does not, however, allege facts showing how each individual plaintiff was directly involved in or personally responsible for the alleged violations of his constitutional rights.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see, also*, *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) ("Government officials are personally liable only for their own misconduct").

Here, plaintiff's amended complaint takes a shotgun-like approach, naming a string of defendants allegedly responsible for each alleged violation. For instance, in paragraph 20, plaintiff claims that he did not receive cleaning supplies, and gives various details to support the claim. (Docket No. 6 at 6-7). He then lists all of the defendants' names in a sentence, concluding that none of them "took any remedial measures to correct these problems." Similarly, in paragraph 21, plaintiff alleges that he received inadequate nutrition. (Docket No. 6 at 7). Again, he lists the names of all the defendants, and states that they "took no collective or individual action to ensure" plaintiff received edible meals. He never states how any specific individual defendant violated his rights or was somehow to blame for the alleged harm he suffered. This

type of pleading does not meet the requirement that plaintiff establish a causal link to, and direct responsibility for, the alleged deprivation of his rights. In order to meet this threshold, plaintiff must plead that each individual defendant, through his or her own personal actions, violated his rights. He cannot raise a claim and then simply assert that all the named defendants are responsible.

The Federal Rules of Civil Procedure require a plaintiff to make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement needs to give the defendant fair notice of the claim and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Plaintiff's amended complaint does not comply with these provisions. By lumping all the defendants together and holding them jointly responsible, as plaintiff does throughout the amended complaint, he fails to give each defendant fair notice of what they are alleged to have done.

Because of the nature of the allegations and because plaintiff is proceeding pro se, the Court will allow him an opportunity to file a second amended complaint. Plaintiff should type, or neatly print, the second amended complaint, and should use a court-provided form. Plaintiff should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b). Plaintiff should select the claim(s) he wishes to pursue, and limit the factual allegations to only the defendant(s) who were actually involved. If plaintiff names more than one defendant, he must assert only claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may name one single defendant and bring as many claims as he has against him or her. *See* Fed. R. Civ. P.

18(a). Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both.[2]

In the "Caption" section of the form complaint, plaintiff should write the name of the defendant(s) he wishes to sue. The title of the complaint must name all of the parties that plaintiff intends to sue. *See* Fed. R. Civ. P. 10(a). In the "Statement of Claim" section, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should write a short and plain statement of the factual allegations supporting his claim against that specific defendant. If plaintiff is suing more than one defendant, he should follow this same procedure for each defendant. That is, for each defendant, he must separately write the defendant's name and then, under that name, provide a short and plain statement of the factual allegations supporting his claim against that specific defendant. The Court emphasizes that it is not sufficient to list a group of defendants and state they violated his rights. Instead, plaintiff must separate his claims, and must allege facts showing how each individual defendant is directly responsible for the alleged harm. The allegations must be simple, concise, and direct. As noted above, they must be in numbered paragraphs, each paragraph limited to a single set of circumstances.

After receiving the second amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. If plaintiff fails to file a second amended complaint on a Court-provided form within twenty-one days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to plaintiff.

Accordingly,

---

[2] The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

**IT IS HEREBY ORDERED** that the Clerk is directed to mail to plaintiff a copy of the Court's prisoner civil rights complaint form.

**IT IS FURTHER ORDERED** that plaintiff must file a second amended complaint within twenty-one (21) days from the date of this Order.

**Plaintiff's failure to timely comply with this order will result in the dismissal of this case without prejudice and without further notice.**

Dated this 21st day of May, 2018.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE